Filed 1/27/21  P. v. Ruiz CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>RICHARD RUIZ,<br><br>   Defendant and Appellant. | 2d Crim. No. B306564<br>(Super. Ct. No. ZM049908)<br>(Los Angeles County) |

Richard Ruiz appeals an order determining that he is a developmentally disabled person who is dangerous to himself or others, and committing him for one year to the State Department of Developmental Services (Department) pursuant to Welfare and Institutions Code section 6500.[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

In July 2017, Ruiz was prosecuted in two criminal proceedings in Los Angeles County.  The first prosecution

_____

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

concerned his making repeated criminal threats to shoot an employee of the California State Council of Developmental Disabilities. Ruiz informed the employee that he had access to a shotgun and would shoot him in the head. (Pen. Code, § 422.) The second prosecution concerned Ruiz resisting a police officer by activating a taser to challenge the officer. (*Id.*, § 69.)

In addition, in June 2017, an employee of the Eastern Los Angeles Regional Center obtained a temporary restraining order against Ruiz after he followed her to her vehicle, shouted profanities at her, circled her vehicle, and attempted to block her from leaving the parking lot.

Prior to the commencement of trial, the trial court found Ruiz incompetent to stand trial and ordered him committed to the Department. Psychological evaluations performed opined that Ruiz suffers from moderate intellectual disability, bipolar disorder, autism, and schizophrenia. Ruiz was placed at the Porterville Developmental Center for restoration of competency.

On March 12, 2019, prior to the end of Ruiz's maximum commitment for restoration of competency, the Los Angeles County prosecutor filed a petition for commitment pursuant to section 6500 ("Persons with Intellectual Disabilities"). Following an uncontested hearing, the trial court found that Ruiz was a developmentally disabled person who is dangerous to himself or others, and that there was no suitable alternative to judicial commitment to the Department. The court then committed Ruiz to the Porterville Developmental Center for one year.

In February 2020, the Department moved Ruiz into a community setting, i.e., an independent living apartment in San Gabriel. There Ruiz received continuous monitoring and supervision through a regional center vendor.

2

On April 30, 2020, the prosecutor filed a petition to continue Ruiz's commitment for an additional one year. On June 23, 2020, the trial court held a contested commitment hearing.

Mayo Kennedy, a licensed psychologist with the Porterville Developmental Center, testified through video-conferencing. She had interviewed Ruiz, reviewed his admission packet, and his independent program, and spoke with staff employees. Kennedy had interviewed Ruiz previously regarding his competency to stand trial.

Kennedy opined that Ruiz had a developmental disability and a mild intellectual disability. She stated that he was unable to remain focused during the interview and was "fixated" regarding the regional center. Ruiz was aware of the restraining order against him and knew "the exact date" that the order would expire. He appeared angry and emotional regarding the regional center and admitted that he would contact them if necessary. Ruiz also displayed a low tolerance for frustration.

Kennedy testified that Ruiz behaved well at the Porterville Center, other than in January 2019, when he called a different regional center. She opined that he was presently dangerous due to his developmental and mild intellectual disabilities. Her opinion rested upon Ruiz's preoccupation with and frustration toward the regional center.

Hugo Salazar, a caregiver employed by a business providing services to assist disabled individuals living independently, testified that he works with Ruiz to help him prepare food and make plans about his future. He stated that Ruiz becomes easily agitated and sometimes leaves his apartment in anger. Salazar described an incident where he located Ruiz approximately a mile from the apartment and had to

3

persuade him to return.  Salazar also stated that Ruiz informed him that he plans to live in an alley in Whittier as a survivalist and to collect recyclables.  Ruiz frequently requested a cellular telephone so that he could call the counseling center.  Although Ruiz demonstrated progress, Salazar opined that Ruiz was not ready to be released from his commitment because he would live in the streets.

Following a contested hearing and argument by the parties, the trial court determined that Ruiz met the requirements of section 6500 beyond a reasonable doubt and committed him to the Department for an additional one year.  In explaining its ruling, the court stated that Ruiz has a low tolerance for frustration and requires professional assistance during times of high anxiety to preclude possible violent behavior and a forceful police response.

Ruiz appeals and contends that insufficient evidence supports the determination that at the time of the commitment hearing, he posed a severe danger to himself or others as a result of his developmental disability.  He also asserts that the trial court prejudged the issue of dangerousness.

*DISCUSSION*

*I.*

Ruiz argues that he has been denied due process of law pursuant to the federal and state Constitutions by a commitment determination that does not rest upon sufficient evidence of current dangerousness due to his developmental disability.

Section 6500, subdivision (b)(1) authorizes the trial court to involuntarily commit a developmentally disabled person if "the person is found to be a danger to self or others."  To sustain a true finding on a section 6500 petition, there must be proof

4

beyond a reasonable doubt that the subject of the petition is developmentally disabled, dangerous to himself or others, and has serious difficulty controlling his dangerous behavior due to his disabilities. (*People v. Cuevas* (2013) 213 Cal.App.4th 94, 108.) The "danger" referenced in section 6500 must involve conduct that represents the likelihood of serious physical injury. (*People v. Hartshorn* (2012) 202 Cal.App.4th 1145, 1153-1154.) Nevertheless, section 6500 does not require proof of a recent overt act while in the care and treatment of a developmental center to sustain a finding of dangerousness. (*Id.*, subd. (b)(3).)

In our review of the commitment order, we review the entire record and draw all reasonable inferences therefrom most favorably to the order to determine whether there is reasonable and credible evidence to support the findings of the trier of fact. (*People v. Cuevas, supra*, 213 Cal.App.4th 94, 106-107.)

Sufficient evidence and all reasonable inferences therefrom support the trial court's findings that Ruiz is currently dangerous to himself or others as a result of his developmental disability. Kennedy testified that Ruiz was angry, frustrated, and fixated upon the regional center; he also knew exactly when the restraining order against him would expire. She opined that Ruiz was presently dangerous as a result of his low frustration tolerance and inability to use coping skills without extensive supportive services. Salazar testified that Ruiz would become upset, angry, and run away, causing Salazar to search for him as far as one mile away. He opined that Ruiz has potential for independent living but was not yet ready to live without assistance. Salazar pointed out that Ruiz declared his intention to live in an alley in Whittier as a survivalist. Ruiz also continued to blindly challenge authority, screaming at his

5

physician and becoming agitated at a caregiver who was taking him to the bank.  (In July 2017, Ruiz activated a taser to challenge a police officer.)  The court's order is supported by sufficient evidence.

## II.

Ruiz asserts that the trial court prejudged whether he was dangerous to himself or others as a result of his developmental disability.  He points to the court's mistaken reliance upon the April 2017 criminal threats incident (threatening to shoot an employee in the head) as a recent occurrence, until corrected by counsel.  Ruiz contends that the prejudgment denied him due process of law and a fair trial.

After defense counsel corrected the trial court's mistaken reliance on the criminal threats incident as a recent occurrence, the trial judge stated that there nevertheless remained "a lot of evidence."  The judge then noted Ruiz's quickness to anger, high anxiety, and low tolerance for frustration as warranting his continued need for professional care and support.  The court received the testimony of two witnesses, heard oral argument, engaged with counsel, and then explained its ruling.  There is no evidence or reasonable inference of prejudging.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


PERREN, J.          TANGEMAN, J.


6

Robert S. Harrison, Judge

Superior Court County of Los Angeles

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.